IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00957-MSK-KLM

JAMES FREDERICKS,
BROOKE FREDERICKS,
ELISABETH FREDERICKS, and
SARAH FREDERICKS,

        Plaintiffs,

v.

ROCKY MOUNTAIN OFFENDERS MANAGEMENT SYSTEMS, INC.,
RAGNAR STORAASLI, Ph D.,
MARY MARGARET JONSSON, Ph.D., and
PARKER & FROYD MENTAL HEALTH SERVICES, P.C.,
*With All Governmental Personnel Named in Their Individual Capacities,*

        Defendants.

## ORDER REGARDING MOTION FOR RECONSIDERATION

THIS MATTER comes before the Court on the Plaintiffs' motion **(#203)** asking the Court to reconsider its Order **(#179)** which resulted in dismissal of all claims against Trina Koehn and Michael Riede. Ms. Koehn and Mr. Riede responded **(#206)** in opposition, and the Fredericks replied **(#231)**. Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

The Plaintiffs, James, Brooke, Elisabeth and Sarah Fredericks (collectively, "the Fredericks") asserted four claims in a Second Amended Complaint **(#71)** against Colorado probation officers Trina Koehn and Michael Riede, in their individual capacities, seeking only monetary relief. For purposes of this Order, familiarity with the alleged facts and claims is assumed. In an Order **(#179)** issued September 28, 2007, the Court concluded that Ms. Koehn

and Mr. Riede were entitled to qualified immunity on Claims 1 through 3 (federal claims), and that Claim 4 (willful and wanton acts) failed to state a claim for relief. Thus, all four claims were dismissed.

The Fredericks move for reconsideration of the portion of the order that dismissed claims against Ms. Koehn and Mr. Riede. Ms. Koehn and Mr. Riede respond that the Fredericks have not demonstrated that any reconsideration is warranted under Fed. R. Civ. P. 60(b), and that there is no justification shown to reconsider the dismissal. The Fredericks reply that their motion is not governed by the "heightened standard" of Fed. R. Civ. P. 60(b), because the Court's order was interlocutory, rather than a final order.

**I. Procedural Context**

The Rules of Civil Procedure do not specifically recognize a "motion for reconsideration." *See Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005). Generally, a court treats a motion for reconsideration of an order or judgment as falling under Fed. R. Civ. P. 59(e) or Rule 60(b), depending upon how soon following the docketing of the order the motion is filed. *Id.* These rules favor finality and affect appeal rights. But where the order for which reconsideration is requested is interlocutory, the interests of finality and timeliness of appeal do not apply. Therefore, if the motion seeks reconsideration of an interlocutory order, the timing of the motion is not significant. *See id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983)); *see also Raytheon Constructors, Inc. v. Asarco Inc.,* 368 F.3d 1214, 1217 (10th Cir. 2003).

In reconsidering an interlocutory order, the Court focuses upon whether there is (1) a change in controlling law, (2) new evidence which was previously unavailable, or (3) the need to correct clear error or prevent manifest injustice. *See Servants of the Paraclete v. Does,* 204 F.3d

2

1005, 1012 (10th Cir. 2000). Because the underlying Order addressed a Motion to Dismiss, which was determined upon review of the Complaint, and there is no argument as to a change in controlling law, the only issue is whether there is a need to correct clear error or prevent manifest injustice.

The Fredericks oppose the Court's dismissal of federal claims personally asserted against Ms. Koehn and Mr. Riede and the dismissal of the purported claim for willful and wanton conduct. As to the dismissal of the federal claims, the Fredericks argue that Court should reconsider its determination that the claims personally asserted against Ms. Koehn and Mr. Riede are barred by the doctrine of qualified immunity. They contend that the doctrine of qualified immunity does not apply because:

(1) Ms. Koehn and Mr. Riede had a non-discretionary duty to supervise Troy Wellington with active GPS monitoring. Because probation policies required active GPS monitoring, the Court made an impermissible factual finding that the probation officers exercised discretion.

(2) Mr. Riede's recent deposition testimony shows that the only means of complying with the state court's order regarding supervision of Mr. Wellington was to use active monitoring. This demonstrates that he had a nondiscretionary duty to use active rather than passive monitoring.

(3) When they moved Mr. Wellington from active to passive monitoring, the probation officers breached a nondiscretionary duty under the Colorado Victims Rights Act to inform the Fredericks.

(4) The Complaint contained allegations that the duty to supervise was not discretionary and that the probation officers abandoned their obligation to supervise Mr. Wellington.

(5) Case law shows that it was clearly established that the conduct of Ms. Koehn and Mr. Riede would violate the Plaintiffs' constitutional rights.

In addition, the Fredericks contend that dismissal of the willful and wanton claim was improper because the motion to dismiss and response did not specifically address whether it

3

could be such a freestanding claim under Colorado law. Had they known that it could be dismissed, they would have sought leave to amend their complaint to include claims of negligence, gross negligence, and negligent infliction of emotional distress.[1]

Ms. Koehn and Mr. Riede respond that the Court properly determined their entitlement to qualified immunity, and that dismissal of the willful and wanton claim was proper.

**II. Qualified Immunity**

The first four of the Fredericks' arguments with regard to the qualified immunity determination reflect a fundamental misunderstanding of the doctrine. The Fredericks contend that if a government official has a non-discretionary obligation to follow certain rules, regulations or orders and the official fails to do so, then the qualified immunity doctrine does not apply. For this contention, they rely upon *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and *Hope v. Pelzer*, 536 U.S. 730 (2002).[2] They misread both opinions.

It is worth noting at the outset that qualified immunity applies only to claims arising under federal law brought personally against governmental employees. The dismissal of federal claims against Ms. Koehn and Mr. Riede does not impact the Fredericks' ability to assert claims based on state law or federal claims against them in an official capacity. The dismissal is not premised upon the determination of any fact or with any assessment of the legal or factual merit

---

[1] The Court views the instant motion solely as a motion to reconsider. Any request for leave to amend needs to be filed by a separate motion under Fed. R. Civ. P. 15(a).

[2] When the issue of qualified immunity was raised in the motion to dismiss, the Fredericks argued that individually named defendants were are not entitled to qualified immunity because they performed "ministerial, mandatory or non-discretionary acts". For this cite-bite, they referred to *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), *Hulen v. Yates*, 322 F.3d 1229 (10th Cir. 2003) and *Perez v. Unified Government of Wyandotte County/Kansas City, Kan.*, 432 F.3d 1163 (10th Cir. 2005). They reasoned that Ms. Koehn and Mr. Riede were required to maintain active monitoring as a non-discretionary duty, and that their failure to do so deprived them of the availability of qualified immunity as a defense.

4

of any claim. Indeed, for purposes of the motion to dismiss and this motion, the Court treats all the well-pled facts in the Complaint as true. With that in mind, the Court turns to the law.

The Fredericks' reliance upon *Harlow* is misplaced. In *Harlow*, the Supreme Court addressed the limits of **absolute immunity**, not qualified immunity. Ordinarily, government officials such as judges, prosecutors, legislators or the President of the United States are shielded by absolute immunity with regard to decisions made within the scope of their office. In *Harlow*, the Supreme Court was presented with the question of whether second tier officials, such as high-level government aides, were similarly protected. In concluding that such aides were not protected by **absolute immunity**, it considered the official employees' degree of discretion. Concluding that **absolute immunity** was not available, the Court observed that the officials, however, might avail themselves of a different type of immunity – qualified immunity.[3]

Qualified immunity applies to claims brought against government employees, individually, that seek monetary relief for violation of a federal (most often, constitutional) right. Qualified immunity bars such claims unless the employee's conduct violated a clearly established federal right and a reasonable person would have known that such conduct would do so. *See Wilson v. Layne,* 526 U.S. 603, 609 (1999); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1247 (10th Cir. 2003). Ordinarily, whether qualified immunity applies is not affected either by the defendant's authority/discretion or by the defendant's failure to follow rules, procedures or orders.[4]

---

[3] The two Tenth Circuit cases which the Fredericks have cited, *Hulen* and *Perez*, offer nothing that changes the lesson of *Harlow*. *Hulen* simply cites to *Harlow*, and *Perez* cites to *Hulen*.

[4] If there are rules and regulations that are expressly designed to prevent violation of a federal right, their existence could be pertinent to the qualified immunity analysis. Such rules could indicate that a federal right was clearly established and/or that a reasonable person would have known that engaging in
(continued...)

5

The decision in *Hope* demonstrates the application of the doctrine. In *Hope*, prison guards handcuffed an inmate to a hitching post for several hours. The Supreme Court found that the federal right at issue was the Eighth Amendment right to be free from cruel and unusual punishment. It concluded that individual capacity claims were not barred by qualified immunity because such right was clearly recognized, and a reasonable person would have known that use of the hitching post would violate the Eighth Amendment based upon binding circuit precedent proscribing the practice, a prison regulation forbidding the practice, and a Department of Justice report advising that use of the hitching post was unconstitutional.

The flaw in Fredericks' interpretation of *Harlow* and *Hope* is, perhaps, best demonstrated in the Supreme Court's decision in *Davis v. Scherer*, 468 U.S. 183 (1984). In that case, a state patrol officer was discharged from his employment for holding outside employment, even though there was a state regulation which authorized such employment. He claimed that his employment as a patrol officer was terminated in violation of his rights under the Due Process Clause. The officer argued that his supervisor was not entitled to qualified immunity due to the mandatory

---

⁴(...continued)
particular conduct would violate such right. That is not true here, however, because the rules, regulations, statutes and orders at issue are state law and there has been no showing that they were created to address or protect federal rights.

In addition, the existence of rules and regulations that are followed by the official could give rise to a claim which might be asserted directly against the governmental agency or authority that employed and supervised the official. For instance, when an official follows an unconstitutional policy or practice of his or her employer, then the official's acts are deemed to be those of the employer. Absent some other type of immunity (*i.e.*, Eleventh Amendment immunity), the employer can be named as a defendant pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978). *See Simmons v. Uintah Health Care Special Dist.,* 506 F.3d 1281, 1284-85 (10th Cir. 2007).

Ultimately, if the doctrine of qualified immunity is not applicable, the failure of a government official to follow rules, regulations or orders could affect the official's ultimate liability and the damages awarded. Similarly, such conduct can be applicable to claims based upon state law.

6

regulation. The Supreme Court rejected this argument, observing that because federal law created the right, the failure to follow a mandatory state statute or regulation did not result in forfeiture of entitlement to qualified immunity. *Id.* at 193-96. It also clarified that if a government employee violates a person's federal or constitutional right, even in the face of a mandatory regulation, the employee is entitled to qualified immunity if it was not clearly established that the employee's conduct would violate such right. *Id.* at 197. This is the pertinent analysis which has been reiterated many times since *Davis*, including in the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

In the case at bar, the Fredericks assert federal claims pursuant to 42 U.S.C. § 1983, all premised upon alleged violations of their rights to substantive due process (danger creation theory). Such rights were neither created nor expressly protected by Colorado statutes, regulations or order of the Colorado trial court. Non-compliance with such rules and regulations may give rise to claims based on Colorado law. However, as *Davis* teaches, non-compliance with state law is irrelevant to the qualified immunity analysis. Accordingly, the Court rejects the Fredericks' first four reasons for reconsideration.

The Court then turns to the fifth reason for reconsideration – that a reasonable person would have reasonably known that the conduct of Ms. Koehn and Mr. Riede would violate the Fredericks' right to substantive due process. Again, with regard to this question, the emphasis is upon the federal nature of the right. The mere fact that a state policy, statute, or regulation forbids or requires a particular practice does not put a reasonable person on notice that particular conduct would violate a federal statutory or constitutional right. To put a reasonable person on notice, the applicable law must articulate its protection of the federal right or there must be case authority demonstrating that the conduct would violate the specified federal right. *See Martinez*

7

*v. Carr,* 479 F.3d 1292, 1295 (10th Cir. 2007). A plaintiff need not identify a factually identical case, but must identify case law that is substantially similar in order advise the reasonable person that the conduct would violate federal law.

Previously, the Fredericks provided no case authority to demonstrate that a reasonable person would have been on notice that switching Mr. Wellington's GPS monitoring from active to passive would violate a clearly established federal or constitutional right. The Fredericks now direct the Court to four cases – all from outside the Tenth Circuit – which they contend satisfies this requirement. *L.W. v. Grubbs,* 974 F.2d 119 (9th Cir. 1992); *Semler v. Psychiatric Institute of Washington, D.C.,* 538 F.2d 121 (4th Cir. 1976); *Faile v. South Carolina Dept. of Juvenile Justice,* 566 S.E.2d 536 (S.C. 2002); *Swader v. Commonwealth of Virginia,* 743 F. Supp. 434 (E.D. Va. 1990).

The facts of *Grubbs* and *Swader* are not sufficiently similar to those of this case. Neither involved supervision of a released offender, nor a change in terms of supervision which resulted in injury to (or an attempt to injure) a third person.[5] However, the facts of *Semler* and *Faile* are arguably similar to the instant case (*Semler* more so than *Faile*). Both involved changes to an offender's supervision, following which the offender killed or injured a third person.[6] Neither of

---

[5] In *Grubbs*, a nurse employed at a correctional institution was raped and terrorized by an inmate after she had been led to believe that she would not have to work with violent sex offenders. In *Swader*, the daughter of a correctional employee, who was required to live in the residential portion of the correctional center complex, was raped and murdered by an inmate who had been allowed to work unsupervised in the residential area.

[6] In *Semler*, an inmate who had a history of sexually molesting young girls was ordered to confinement in a psychiatric institution after he abducted a young girl. Two years later, he was improperly released and treated as an outpatient, in violation of a court order. While on outpatient status, he then killed a girl with whom he had no prior relationship. In *Faile*, a juvenile with known aggressive tendencies, on probation after committing grand larceny of a bicycle, was placed in foster care. After he used a gun to threaten his foster mother, he was placed in his mother's home, rather than another foster home as required by court order. Approximately one week after such placement, he assaulted a 9-year old boy, in an apparently random act of violence.

8

these cases, however, involved a claim that any federal or constitutional rights were violated. Both cases were limited to negligence or gross negligence claims brought under state law. Thus, the reasonable person who had knowledge of these cases would not have had notice that the tortious conduct would violate a federal or constitutional right. Accordingly, this case law is insufficient to justify vacation of the order dismissing the federal claims due to application of the doctrine of qualified immunity.

As for dismissal of the freestanding willful and wanton claim, there simply is no such freestanding claim under Colorado law. Although the Fredericks may seek to amend their complaint to assert other claims, no good cause has been shown to justify reinstating this one.

**IT IS THEREFORE ORDERED** that the Fredericks' motion **(#203)** for reconsideration is **GRANTED** in so far as the Court has considered the arguments submitted, but upon reconsideration the Court declines to modify its prior Order **(#179)** in which it dismissed Claims 1 through 4 against Ms. Koehn and/or Mr. Riede.

Dated this 13th day of August, 2008

                                                **BY THE COURT:**

                                                Marcia S. Krieger
                                                United States District Judge